and who you represent. Please call the case. For the defense, Epelante. Good morning, your honors. Assistant State's Attorney Joan Frazier on behalf of the people. Ms. Frazier. Each side has 15 minutes. I can promise you that we've reviewed the briefs and the pertinent portions of the record. So if you would, I'll get to your strongest point first. We do not look at our watches on this division, especially when we have one case. So whenever you're ready, Ms. Levy. Mr. Oliver has shown a substantial violation of his constitutional right to a fair trial, where the jury was interrupted with an incorrect version of Illinois pattern jury instruction 3.15, which is the instruction on how to evaluate the reliability of eyewitness identification testimony. There's no dispute that Oliver's jury was interrupted with a version of IPI 3.15 that the Illinois Supreme Court has twice found is clear and obvious error. The court's found that it's error because it allows the jury to consider only one of the five relevant factors regarding the reliability of eyewitness identification when the jury is supposed to consider all five of the factors. The time of Oliver's trial and direct appeal, the law was well established that all five factors should be considered together. And the law was based on the case law at the time, as well as the committee note to the third edition of IPI 3.15, which was in effect at the time of Oliver's trial. I'd like to thank you first, Ms. Levy. And I mean this, that page 19 of your brief, you correctly point out that in no way, shape, or form do the committee comments to 3.15 indicate that or should be dropped. But rather, it's in the table of the sample set of instructions. That's the first time it's actually dropped. And nobody ever points it out, but you did. I pointed it out once in a concurrence about eight years ago, and nobody ever commented on it again, including our Supreme Court. But you did, and I appreciate that. Let's start at the beginning if we can. This is here before us in a post-conviction matter, right? Yes. Who was the trial judge initially? Not Matt Cotlin, but who tried the case? Do you know? I don't recall. It's all right. The second trial? Right, the second trial. I don't recall. That's quite all right. Going back, but as a PC, they say Cole, I believe it is, for the proposition that when was this 315 issue initially raised? Is it in his petition? It's not in his. It was in his final amended petition. It was in that. Okay. Okay, very good. Well, then it's there. What cases, we blend the cases together, Piotrowski, et cetera, which are directive field cases. Do you think it makes any difference that this is a PC case as opposed to a direct appeal case on the plain error issue? It does in the sense that plain error on its own does not apply in post-conviction proceedings, which is why we have alleged that the appellate counsel was ineffective for failing to raise this issue on direct appeal. Going back, in terms of trying to differentiate, because a lot of cases cite these cases, obviously, whether it be Herron or Piotrowski. Has it been definitively decided that you can provide relief on a PC where Orr was left out? Has any case actually ruled directly on that issue? Unpublished. Unpublished? But no published case has actually held yet that Herron should be applied retroactively. Would that be right? Again, I don't know. I'm not trying to mislead you. I don't know. I'm asking you. I don't think I've seen one yet. I mean, I don't know that it would be a retroactive issue. Well, can it be raised for collateral relief? Yes, it can be. Because it's incorrectly raised. You're right. It's not really retroactive. Has a case decided, been decided by a court of review, Illinois appellate or Illinois supreme, where they held that leaving out the word Orr may be the basis to provide relief on collateral relief? Recently, a different division of this court held that in an unpublished case. But not in any published case? Not that I'm aware of. I'm astonished at this court when we do that. If we have the courage of our convictions, although it's a bad word to use in criminal, somebody should actually say that then, one way or the other. I agree. Okay. Are you asking us to do that? Yes. Whatever we do to make an opinion and decide the initial issue, would you agree that the initial issue should be, can a heroin violation provide the basis for collateral relief? Since we ordered you not to cite our unsighted case, do you know the citation of the unsighted case? I have it in my. Whenever you send up a reply, get it then. Okay, but go ahead with your argument. As a result of the incorrect instruction being given to Oliver's jury, his counsel on direct appeal was ineffective for failing to raise this issue, either as plain error or as ineffective assistance of trial counsel. There's no strategic reason not to raise a meritorious issue on direct appeal, and this issue would have had a reasonable probability of success if it had been raised. And that's because DiPella Court would have found plain error, given that the evidence presented and the reliability of the eyewitness testimony was closely balanced in this case. The entire defense in this case was one of mistaken ID. Only one witness was able to identify him. There were two people who wanted another. And she knew him, right? So the facts. She thought she knew him. Well, Ralph, and sure enough, Mr. Oliver's nickname per everybody is Ralph, right? Correct? Yes, she was. And she knew him through a girlfriend of hers, her friend. Cousin. Cousin, who then said, yes, that guy's name is Harold Oliver, right? Yes, but. And when she's being raped or attacked, he's trying to make her have a cover-up of a jacket, which I would suggest to you, criminals who attack people while either masked or trying to hide, make the victim not be able to see, they do that because they know the victim. That's the first thing. I've done this all my life. And they're wearing a mask? Well, then I wonder who they know. Because invariably, they know the victim. Otherwise, they wouldn't bother wearing a mask. So what's your strongest point, though, other than her? That's not going to help you, I'd suggest to you. The idea that she didn't know the guy, she names the guy, says the guy. He initially grabs her from behind and pointed a gun at her neck and covered up her face during much of the attack. She, I believe, initially thought it was this person, and then once she had decided that it was this man named Ralph, she stuck with that as her conviction. That was argued to two separate juries, right? And, again, I understand the first jury doesn't count. It was, but the jury was also instructed that they could consider only that factor if they wanted to in evaluating her identification testimony. So I do believe that it's closely balanced. And Pietkowski, the Illinois Supreme Court, noted that there are two eyewitnesses in that case. Both of them were unequivocal about their IDs, and they both never wavered from their identification of the defendant. And they still found that the evidence about regarding the reliability of the eyewitness ID was closely balanced and found that there was plain error. So I think the fact that she was certain of it isn't really, doesn't go to the fact that it wasn't closely balanced. I didn't see this today. My point was that she knew the guy, but it was Harold. She knows him as Ralph. Everybody knows this guy. His name is Harold. Oh, it was Ralph. She knows him. She thinks that's the person who assaulted her, but it's not necessarily the case that he is the person who assaulted her. His contention is that he isn't the person who assaulted her. And the other evidence in the case against him is not that overwhelming. He was arrested shortly after the offense, and they didn't find a gun in his home. They didn't find the leather jacket that the offender had stolen from her, and they didn't find any of the clothes that she said he had been wearing. There's no confession, no fingerprints. But there's a DNA, and the DNA, per the bottom of page 8 and the top of page 9 of your brief, point out that an expert witness named Dedman opined that the chance of this DNA being shared by another African-American male is 1 in 2,200, right? Yes. Okay. Now, so 1 in 100 being 1 percent, 1 in 1,000 being a tenth of a percent. So this would be 2 out of a ten-thousandth, right? So it's 1 out of 5,000 chance that it's the wrong guy. I may be off by a factor of 10. I'm not trying to mislead you. I can't do the math. But 1 out of 2,200 is pretty strong. Well, it is also a 5 loci match, which this court recently has called into question in people versus the right. Even a 9 loci match is not necessarily being enough. And we'll see who follows that, because I think this panel has already disagreed with that. Okay. Frankly, it's out of the decision. But 1 in 20, and again, these are what I have. We have the records in front of us. And 1 in 2,200, because I'll be honest, I have Bob Gordon's theories case. But here, it's based on 1 in 2,200. And accepting that, and again, I don't accept your brief as holding you locked into it. But 1 in 2,200, I suggest, is pretty darn good. And that's what the numbers are in this case. Is that right? That is what he testified. I believe that the defense had an issue with that expert being qualified as an expert in population genetics and raised that on direct appeal. Well, aren't we obligated up here, again, going back to the very basics, to believe everything the state says, generally, unless it's absurd. It's kind of the opposite of a normal PC. We have to take the evidence in the light most favorable to the winner. And in criminal, that's invariably the state by definition. So if there's any possible breaks or lack of credibility, unless we think it's absolutely absurd, aren't we obligated to say, well, 1 in 2,200, that's the answer, in terms of Dedman. How can this court say that Dedman is wrong? Whether or not the evidence regarding the eyewitness identification instruction was closely balanced, it's an entirely separate question from whether or not the state proved its case beyond a reasonable doubt. But isn't the issue in identity? This is strictly an identity case, is it not? The only issue in this trial was identity, because she was horribly molested, right? Nobody's contesting the facts. So the question is, who done it? And as a whodunit, doesn't the fact that the DNA recovered at the scene, on the floor of the vestibule, there's only a 1 in 2,200 chance that belongs to a different African-American male than this guy? I disagree that a 5 loci match is conclusive. I didn't say it was conclusive. I said it's 1 in 2,200. By definition, right, you see in the DNA, because there are 1 in 4 quadrillion. This is not a 1 in 4 quadrillion. Right, I disagree that it's a strong showing of a match. I wouldn't expect you to concede. He also had a fairly credible alibi defense in that several witnesses testified that he was at work around the time of the assault. Two and a half miles away, right? 3.3. Well, I'd live that way. It's 85th and Cottage, right to 72nd and near Jeffrey. I don't know if you need a car or a bicycle. The car you can do it in 3 minutes and the bicycle you can do it in 6. Running, 10. Not neat. But it's pretty close. Again, it's not your normal alibi in the South Side. The normal alibi in the South Side, I was at my mother's across the street. So this is at least two and a half or three miles, whatever it is. Okay. Our position is that Oliver certainly has made an adequate showing that this issue would have had a reasonable possibility of success if it had been raised under Act of Appeal either as a plain error or ineffective assistance of trial counsel. And we're asking this Court to reverse the circuit court dismissal of his PC and remand the matter for an evidentiary hearing. Thank you. And could you look up that case? Yes. Ms. Frazier, whenever you're ready. Good morning, Your Honors. Assistant State's Attorney Joan Frazier on behalf of the people. First of all, this claim is not properly before this Court because the claim of ineffective assistance of appellate counsel was not included in the defendant's petition. Excuse me. The Post-Conviction Act at Section 122-3 states in no uncertain terms that any claim of a substantial denial of constitutional right that's not in a petition is waived. This claim is not in the petition. In Jones, the Supreme Court said very clearly if a claim has not been raised in the petition, the appellate courts do not have the supervisory authority to reach it, even under a theory of judicial authority. And furthermore, in the Cole case, the Court not only followed what the Illinois Supreme Court said, but said that it's not permissible to read an implicit claim of ineffective appellate assistance of counsel. Well, was it raised at all in the amended petition? No, Your Honor. No. No, it was not. So what did the pro se petition start with? The pro se petition's claim was that the defendant claims he was denied a fair trial and denied his rights under the Sixth and Fourteenth Amendment because the IPI instruction that was given was incorrectly worded. And that would be 315, though, right? Correct. Okay. So in his pro se petition, here's a guy, convicted rapist, doing time in one of our wonderful institutions, and he says 315 was improper. The 315 instruction provided to my jury, the second jury, was improper. And that is forfeited. Why? Because the claim that's raised before this Court is ineffective assistance of appellate counsel. That claim is not in the defendant's petition. And in Cole, the Court said courts may not read an implicit claim of ineffective assistance of counsel just because appellate counsel has raised it on behalf of the defendant. There were three separate writings in Cole, were there not? Yes. Rudy Garcia by one side, Stu Palmer, extremely experienced fellow on the other, and then Bob Gordon. All right. What else you got other than forfeiture? All right. Well, that's our main point, that it's absolutely under Cole and Jones, not properly before this Court at all. The trial court has never had a chance to review the particular claim. It doesn't belong here. Defense counsel was not deficient, reaching the question of prejudice. Gonzales was a very significant case. Before that, defendant cannot point to any other case that held that it was error to include the ORs in IPI 3.15. The case decided Mannion and Slim and Biggers discussed the identification factors, but none talked about the instruction. Gonzales was decided two years after the defendant's trial, excuse me, four years after the defendant's trial, and two years after the defendant's direct appeal. In Ford and English, the Court talked about how appellate attorneys cannot be faulted for failing to anticipate the law and cannot be found deficient on those grounds. Okay. Assuming you're correct, then I would assume that this Court, meaning the whole appellate court of Illinois, all five districts, will have agreed with you somewhere along the line, right? Because, again, these cases, Herron's been around for a long time now. I'm sorry, Your Honor, I didn't hear that. Has any panel agreed with you that we cannot hold appellate counsel or trial counsel to the standards set forth in Gonzales, or really what I would call Herron, to say that a Herron violation cannot provide relief in a collateral proceeding? Only in the Rule 23 case the defendant mentioned. Okay. But either side, right? So there's apparently a Rule 23. Yes. Agreeing with the defense, it can provide. Yes. A Herron violation, let's just call it there for the sake of it, we know what we're talking about. A Herron violation can provide collateral relief. Any cases going the other way? Not that I'm aware of, Your Honor. Okay. So none of the cases, including Cole, Cole is more of a Jones case, right, where they're saying it's forfeited because he didn't raise it in his petition. Correct. But there are no cases saying, adapting your argument, that Herron, nobody would know about Herron or Gonzales or Furge until they came down. Right? Nobody's addressed it. No, but that's, I'm saying, not this particular issue, but that's what the court said in Ford and English, that when there's a change in the law, when there's a significant change in the law, you can't fault counsel under Strickland for failing to anticipate what the law will be four years from now. I understand it, but on this particular issue, that's why you're in front of us. Apparently, no court of review since Herron has ruled on this issue, which is shocking to me. I'm not blaming the attorneys at all. That's my point. I'm insulting the courts of review, including our Supreme Court. How is it that Herron can be decided when it was decided and no court of review say whether or not they can provide a basis for PC, which is what two-thirds of our call are PCs? That's just stunning to me. So apparently, hopefully, we'll be the first. Maybe, yeah, obviously it hasn't been questioned before. I'm sure the court knows that Gonzales was highly significant. It marked a sea change in the way that the instruction is given. The instruction was amended after that, and apparently no one has questioned it until today. Well, I did in a concurrence, but that's all right, too. Do you happen to have that site of the unpublished opinion? It's called Harlan McDowell. I don't have the site, but that's what the name of the case is. It was handed down maybe 10 days ago. Harlan McDowell? Yes. Okay. It was handed down when? Perhaps 10 days ago. Oh, okay. Yeah. Defense counsel, Anthony. Another reason the defense counsel cannot be held deficient is I'd like the court to look at the brief that he did file on appeal. It was a highly substantive appeal. He raised nine separate issues. Four of them went to DNA. The fact that he chose not to raise this issue, which represents a change in the law, hardly represents deficiency. The brief that defense counsel did file went to oral argument. It didn't succeed, but he raised a number of substantive issues, including some of the issues we heard about this morning, about the adequacy of the DNA evidence. And I would just point out to the court that one of the issues on appeal was the sufficiency of Dr. Dedman's expertise in population genetics analysis. And it was upheld on direct appeal. There was a two-day FRI hearing in this case. Extensive testimony. Who tried it? Judge Urso. Okay. Extensive testimony. Both times? I'm sorry? Both trials? Oh, no, that I can't answer. But the most recent one? The most recent one was before Judge Urso. Okay. So the DNA evidence was presented very thoroughly. It was up to the jury to decide, and they found that the match of one and 2,200 was persuasive evidence. As to prejudice, defendant put aside everything else. Defendant couldn't possibly establish prejudice. This victim knew the defendant. She knew him. She recognized him right away. She had met him several years ago. She used to date a friend of his. She had seen him at the YMCA. She knew this man. If you look at the Neal versus Biggers factors, they all strongly weigh in favor of the state. She had plenty of opportunities to see this man. It was 745 in the morning. There was light coming into the vestibule. This isn't a case like Heron or Pietkowski where the victim didn't know her assailant. As I said, she knew him. And this case is easily distinguishable from Gonzales as well because in Gonzales, the state argued in this closing argument that with regard to IPI 3.15, if the jurors found that any one of the factors applied, the witness's testimony was reliable. In this case, if the court will indulge me, I'd like to read three sentences from the state's closing argument, and this is the only reference to this particular instruction to compare to Gonzales. The state said, there's going to be an instruction talking about her ability to identify him. Think about the situation and circumstances that it says contact. I don't know what the word was supposed to be. Think how close she got to him and about who she was identifying when she came in there as well as when she looked at the photographs in the lineup, the man who assaulted her, period. So there's no comparison. Is that quoted in your brief? I'm sorry? Is that quoted in your brief? I'm not trying to exclude you from it. No. What's the record citation on it? If you have it. Martha, when she does not reply, stand up and tell us. I think it's, I think I have, I think I have 140, but it's in the opening portion of the state's closing argument. Okay. And there was no other reference in the defendant's argument or in the rebuttal argument either. Even if you took away the identification, even if you put that all aside, the defendant still would have been found guilty because of the DNA testing, the fact that this defendant had type O and he was a non-secreter, which puts him in 10 to 20 percent of African-American males. He worked about 10 minutes away from the site of the assault. And finally, the fact that when he was in the lineup, he didn't wear his glasses. And the victim pointed out he wasn't wearing his glasses in the lineup. Couldn't find him. They found he was hiding them under his armpit. So even if you threw out all the identification testimony, this defendant still would have been convicted based on the other unimpeachable evidence. So for these reasons, we would argue, number one, this claim is not properly before this court because it's not in defendant's petition. And number two, defendant cannot show prejudice or deficiency. Thank you. Thank you. Ms. Levy, how about that site? As counsel pointed out, it's People v. Harlan McDonald, and it's 213, ILAP, 121, 325. I'm sorry, could you start again? So it's 2013, ILAP first, right? 121. 121. 325. It's the third division from October 23rd. Okay. Who wrote that? Oh, Natasha, I was sitting there. I thought you had it. No. Okay. Regarding the fact that he did not include in his post-conviction petition that the claim in terms of ineffective assistance of appellate counsel, we believe it's fundamentally unfair to penalize him with a 90-year sentence because he lacked the legal knowledge to frame his claim to overcome forfeiture. This case is different than Jones and Gawley, Jefferson, and Rial's, which are cases that the state cited, because in those cases the underlying claim raised on direct appeal, I mean raised on appeal from the PC, was never even in the petition. And here it was. He did raise it. He cited the Sixth Amendment. He raised it in terms of plain error, and he cited Supreme Court Rule 451C, which states that issues in terms of jury instructions can't be waived. So he's a pro se defendant, didn't know how to color the claim properly for purposes of appeal or for purposes of his post-conviction petition. We also disagree that the law changed with Gonzales. Gonzales was in no different position than Oliver would have been had this issue been raised on direct appeal. The law is exactly the same regarding the issues instruction before versus after in terms of what the factors you're supposed to consider. But again, the only difference, and the only way a trial court would know this, to leave out the ors, was based on the sample instructions, right? Because it's included in the instructions. If you look at 20, whatever it is. It's included in brackets. It's in brackets, right? But it's in there. And in committee comments it dropped the numbers in the brackets, which would tend to lead, since I read English, that they would mean don't leave out the ors, go ahead, do not leave out the ors, since they said leave out the numbers. They could have said and the ors, but they chose not to. So you'd have to go back then to check the sample set. It's the only place a trial court would know. Sitting there, busy guy. And this was, as they mentioned, I think, defense-tendered instruction, right? They tendered it. They don't say or, as you point out in your reply. They don't say or. They say, I want 315, and here's the factors. Okay, everybody's happy as clams. Yay, we got what we wanted, 315. So go ahead. Well, it's incumbent on, I would say, defense attorney and appellate attorney on behalf of the defendant to read the sample instructions in the committee notes. It's incumbent to research the law, which is exactly what eventually happened on appeal in Gonzales. They made the point that in Gonzales, and I had to hear the State Attorney say or, or, or. If it's not or, then that's it. Right? It was emphasized more in closing argument in Gonzales, but I don't know if that's the case in Heron or Piotrkowski. And I think here, certainly, the jury was still instructed that they could consider only one of the factors. They received that instruction orally and then in writing from the judge. And I don't think, I disagree with the State's contention that we can't show prejudice where one of those factors is, number four, the level of certainty shown by the witness when confronting the defendant. So the jury was instructed that they could consider only that factor in terms of evaluating the reliability of her eyewitness testimony. So that's, I think, very damaging. And other than that, if you have any more questions. Thank you very much. Thank you for the briefs, the arguments. This case will be taken under advice, but hopefully we'll have an answer for you. Thank you. Thank you so much. This court will be adjourned.